UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGINIA NORMAN and on behalf of all other persons similarly situated,<br><br>        Plaintiff,<br><br>    –against–<br><br>NATUZZI UPHOLSTERY, INC., and NATUZZI AMERICAS, INC.,<br><br>        Defendants. | 17 CV 8719 |

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      The plaintiff, Virginia Norman, and on behalf of all other persons similarly situated, asserts the following claims against the defendants, NATUZZI UPHOLSTERY, INC., and NATUZZI AMERICAS, INC.

2.      The plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using the plaintiff's computer. The plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20/200. Some blind people who meet this definition have limited vision. Others have no vision.

3.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4.      The plaintiff brings this civil rights action against the defendants for the defendants' failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by the plaintiff and other blind or visually-impaired people. The defendants' denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of the plaintiff's rights under the Americans with Disabilities Act (ADA).

5.      Because the defendants' website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. The plaintiff seeks a permanent injunction to cause a change in the defendants' corporate policies, practices, and procedures so that the defendants' website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as the plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, et seq., and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the plaintiff's New York State Human Rights Law, N.Y. Exec. Law article 15, (NYSHRL), New York State Civil Rights Law article 4 (NYSCRL), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq., (NYCHRL) claims.

8.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because the plaintiff resides in this district, the defendants conducted and continue to conduct a substantial and significant amount of business in this district, the defendants are subject to personal jurisdiction in this district, and a substantial portion of the conduct complained of herein occurred in this district.

9.     The defendants are subject to personal jurisdiction in this district. The defendants committed and continue to commit the acts or omissions alleged herein in this district that caused injury, and violated rights the ADA prescribes to the plaintiff and to other blind and visually-impaired consumers. A substantial part of the acts and omissions giving rise to the plaintiff's claims occurred in this district: on separate occasions, the plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of the defendants' website in this district. These access barriers that the plaintiff encountered have caused a denial of the plaintiff's full and equal access in the past, and now deter the plaintiff on a regular basis from visiting the defendants' premises. This includes the plaintiff attempting to obtain information about the defendants' location(s) (address and hours) in this district.

10.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     The plaintiff, Virginia Norman, at all relevant times, is a resident of New York County. The plaintiff is a blind, visually-impaired, handicapped person and a member of a protected class of individuals under the ADA, 42 U.S.C. § 12102(1)–(2), and the regulations implementing the ADA set forth at 28 CFR § 36.101, *et seq.*, the NYSHRL, and NYCHRL.

12.     The defendant NATUZZI UPHOLSTERY, INC. is and was at all relevant times a California business corporation.

13.     The defendant NATUZZI AMERICAS, INC. is and was at all relevant times a North Carolina business corporation.

14.     The defendants operate www.natuzzi.com and their website, and advertise, market, distribute, and sell their products in the State of New York and throughout the United States. The

defendants are, upon information and belief, licensed to do business and do business in the State of New York.

15.    The defendants operate locations across the United States, including a location in New York City, specializing in high-end furnishings. The defendants' premises provide to the public important goods. The defendants' website provides consumers with access to information about location addresses and hours, and products offered and available for purchase and delivery.

16.    These locations constitute places of public accommodation. The defendants' locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The defendants' website is a service, privilege, or advantage that is heavily integrated with the defendants' physical locations and operates as a gateway thereto.

## NATURE OF ACTION

17.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

18.    In today's tech-savvy world, blind and visually-impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon. An accessibility notice is put on a website by the creator thereof to showcase that the website is working diligently to create a better experience for low-vision or blind users.

19.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech (JAWS) is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

20.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

21.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines (WCAG 2.0). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility.

22.     Noncompliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following: a text equivalent for every non-text element is not provided; title frames with text are not provided for identification and navigation; equivalent text is not provided when using scripts; forms with the same information and functionality as for sighted persons are not provided; information about the meaning and structure of content is not conveyed by more than the visual presentation of content; text cannot be resized without assistive technology

up to 200% without losing content or functionality; if the content enforces a time limit, the user is not able to extend, adjust or disable it; web pages do not have titles that describe the topic or purpose; the purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context; one or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible; the default human language of each web page cannot be programmatically determined; when a component receives focus, it may initiate a change in context; changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component; labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot; in content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique; inaccessible Portable Document Format (PDF) files; the name and role of all user interface elements cannot be programmatically determined; and items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

### Defendants' Barriers on Its Website

23.    The defendants' website is offered to the public. The website offers features that should allow all consumers to access the goods and services that the defendants offer through their physical locations, including, but not limited to, features that allow consumers to find information about location addresses and hours, and products offered available for purchase and delivery.

24.    It is, upon information and belief, the Defendants' policy and practice to deny the plaintiff, along with other blind or visually-impaired users, access to the defendants' website, and to therefore specifically deny the goods and services that are offered and are heavily integrated with the defendants' locations. Due to the defendants' failure and refusal to remove access barriers to its website, the plaintiff and other visually-impaired persons have been and are still being denied equal access to the defendants' locations and the numerous goods, services, and benefits offered to the public through the website.

25.    The plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. The plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. The plaintiff has visited the website on separate occasions using the JAWS screen-reader.

26.    During the plaintiff's visits to the website, the last occurring in November 2017, the plaintiff encountered multiple access barriers that denied the plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied the plaintiff the full enjoyment of the facilities, goods, and services of the website, as well as to the facilities, goods, and services of the defendants' locations in New York by being unable to learn more information about location addresses and hours, and products available for purchase and delivery.

27.    While attempting to navigate the website, the plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to: (1) Lack of alternative text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures,

which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, the defendant's visually-impaired customers are unable to determine what is on the website, browse, look for locations and hours of operation, order food for delivery, check out the defendant's menus and prices, or make reservations. (2) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users. (3) Redundant links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users. (4) Linked images missing alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

**Defendants Must Remove Barriers to Its Website**

28.     Due to the inaccessibility of the defendants' website, blind and visually-impaired customers such as the plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services the defendants offer to the public on the defendants' website. The access barriers the plaintiff encountered have caused a denial of the plaintiff's full and equal access in the past, and now deter the plaintiff on a regular basis from accessing the website.

29.     These access barriers on the defendants' website have deterred the plaintiff from visiting the defendants' physical locations, and enjoying them equal to sighted individuals because: the plaintiff was unable to find the location and hours of operation of the defendants' locations on its website, preventing the plaintiff from visiting the locations to view and purchase products. The

plaintiff intends to visit the defendants' locations in the near future if the plaintiff could access the defendants' website.

30.    If the website was equally accessible to all, the plaintiff could independently navigate the website and complete a desired transaction, as sighted individuals do.

31.    The plaintiff, through the plaintiff's attempts to use the website, has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

32.    Because simple compliance with WCAG 2.0 would provide the plaintiff and other visually-impaired consumers with equal access to the website, the plaintiff alleges that the defendants engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices: constructing and maintaining a website that is inaccessible to visually-impaired individuals, including the plaintiff; failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including the plaintiff; and failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as the plaintiff, as a member of a protected class.

33.    The defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

34.    The ADA expressly contemplates the injunctive relief that the plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of … this title, injunctive relief shall include an order to
> alter facilities to make such facilities readily accessible to and usable by individuals

with disabilities …. Where appropriate, injunctive relief shall also include requiring

the … modification of a policy ….

42 U.S.C. § 12188(a)(2).

35.    Because the defendants' website has never been equally accessible, and because the defendants lack a corporate policy that is reasonably calculated to cause the defendants' website to become and remain accessible, the plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring the defendants to retain a qualified consultant acceptable to the plaintiff to assist the defendants to comply with WCAG 2.0 guidelines for the defendants' website. The website must be accessible for individuals with disabilities who use desktop computers, laptops, tablets, and smartphones. The plaintiff seeks that this permanent injunction require the defendants to cooperate with the agreed-upon consultant to: train the defendants' employees and agents who develop the website on accessibility compliance under the WCAG 2.0 guidelines; regularly check the accessibility of the website under the WCAG 2.0 guidelines; regularly test user accessibility by blind or vision-impaired persons to ensure that the defendants' website complies under the WCAG 2.0 guidelines; and develop an accessibility policy that is clearly disclosed on the defendants' website, with contact information for users to report accessibility-related problems and require that any third-party vendors who participate on the defendants' website to be fully accessible to the disabled by conforming with WCAG 2.0.

36.    If the defendants' website were accessible, the plaintiff and similarly situated blind and visually-impaired people could independently access information about location addresses and hours, and the products offered and available for purchase and delivery.

37.    Although the defendants may currently have centralized policies regarding maintaining and operating the defendants' website, the defendants lack a plan and policy

reasonably calculated to make the defendants' website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

38.    The defendants have, upon information and belief, invested substantial sums in developing and maintaining the defendants' website and the defendants have generated significant revenue from the defendants' website. These amounts are far greater than the associated cost of making the defendants' website equally accessible to visually impaired customers.

39.    Without injunctive relief, the plaintiff and other visually-impaired consumers will continue to be unable to independently use the defendants' website, violating their rights.

## CLASS ACTION ALLEGATIONS

40.    The plaintiff, on behalf of the plaintiff and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access the defendants' website and as a result have been denied access to the equal enjoyment of goods and services offered in the defendants' physical locations, during the relevant statutory period.

41.    The plaintiff, on behalf of the plaintiff and all others similarly situated, seeks to certify a New York State subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the defendants' website and as a result have been denied access to the equal enjoyment of goods and services offered in the defendants' physical locations, during the relevant statutory period.

42.    The plaintiff, on behalf of the plaintiff and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the defendants' website and as

a result have been denied access to the equal enjoyment of goods and services offered in the defendants' physical locations, during the relevant statutory period.

43.    Common questions of law and fact exist among the class, including: whether the defendants' website is a "public accommodation" under the ADA; whether the defendant's website is a "place or provider of public accommodation" under the NYSHRL or NYCHRL; whether the defendants' website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and whether the defendants' website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

44.    The plaintiff's claims are typical of the class. The class, similarly to the plaintiff, are severely visually impaired or otherwise blind, and claim that the defendants violated the ADA, NYSHRL, and NYCHRL by failing to update or remove access barriers on the defendants' website so it can be independently accessible to the class.

45.    The plaintiff will fairly and adequately represent and protect the interests of the class because the plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because the plaintiff has no interests antagonistic to the class. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because the defendants has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to the plaintiff and the class as a whole.

46.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to the class predominate over questions affecting only

individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

47.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

## FIRST CAUSE OF ACTION:
### ADA

48.     The plaintiff, on behalf of the plaintiff and the class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

49.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101, *et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

50.     The defendants' locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The defendants' website is a service, privilege, or advantage of the defendants' locations. The defendants' website is a service that is heavily integrated with these locations and is a gateway thereto.

51.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

52.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

53.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

54.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. The plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Furthermore, the plaintiff has been denied full and equal access to the website, has not been provided services that are provided to other

patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. The defendants failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

55.      Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, the plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION:
## NYSHRL

56.      The plaintiff, on behalf of the plaintiff and the New York State sub-class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57.      N.Y. Exec. Law § 296(2)(a) provides that it is

an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.

58.      The defendants' physical locations are located in State of New York and across the United States, and constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). The defendants' website is a service, privilege or advantage of the defendants. The defendants' website is a service that is heavily integrated with these physical locations and is a gateway thereto.

59.      The defendants is subject to NYSHRL because the defendants own and operate the defendants' physical locations and website. The Defendants are persons within the meaning of N.Y. Exec. Law § 292(1).

60.    The defendants are violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the defendants' website, causing the defendants' website and the services integrated with the defendants' physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that the defendants makes available to the non-disabled public.

61.    Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things,

> a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden.

62.    Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes,

> a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden.

63.    Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their website accessible, including

but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its website accessible would neither fundamentally alter the nature of the defendants' business nor result in an undue burden to the defendants.

64.    The defendants' actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2), in that the defendants have: constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

65.    The defendants have failed to take any prompt and equitable steps to remedy the defendants' discriminatory conduct. These violations are ongoing.

66.    The defendants discriminated, and will continue to discriminate against the plaintiff and the New York State sub-class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the defendants' website and physical locations under § 296(2), *et seq.*, and/or its implementing regulations. Unless the Court enjoins the defendants from continuing to engage in these unlawful practices, the plaintiff and the New York State sub-class will continue to suffer irreparable harm.

67.    The defendants' actions were and are in violation of NYSHRL and therefore the plaintiff and the New York State sub-class invoke their right to injunctive relief to remedy the discrimination.

68.     The plaintiff and the New York State sub-class are also entitled to compensatory damages, and civil penalties and fines under N.Y. Exec. Law § 297(4)(c), *et seq*., for each and every offense.

69.     The plaintiff and the New York State sub-class are also entitled to reasonable attorney's fees and costs.

70.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, the plaintiff and the New York State sub-class pray for judgment as set forth below.

### THIRD CAUSE OF ACTION:
### NYSCRL

71.     The plaintiff, on behalf of the plaintiff and the New York State sub-class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72.     The plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

73.     N.Y. Civil Rights Law § 40 provides that

all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof ….

74.     N.Y. Civil Rights Law § 40-c(2) provides that

no person because of … disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision.

75.    The defendants' New York physical location is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The defendants' website is a service, privilege or advantage of the defendants and the defendants' website is a service that is heavily integrated with these establishments and is a gateway thereto.

76.    The defendants are subject to NYSCRL because they owns and operate the defendants' physical locations and website. The defendants are persons within the meaning of N.Y. Civil Rights Law § 40-c(2).

77.    The defendants are violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to the defendants' website, causing the defendants' website and the services integrated with the defendants' physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that the defendants make available to the non-disabled public.

78.    N.Y. Civil Rights Law § 41 states

any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two … shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby.

79.    Under N.Y. Civil Rights Law § 40-d,

any person who shall violate any of the provisions of the foregoing section, or

subdivision three of section 240.30 or section 240.31 of the penal law, or who shall

aid or incite the violation of any of said provisions shall for each and every violation

thereof be liable to a penalty of not less than one hundred dollars nor more than five

hundred dollars, to be recovered by the person aggrieved thereby in any court of

competent jurisdiction in the county in which the defendant shall reside.

80.    The defendants have failed to take any prompt and equitable steps to remedy its

discriminatory conduct. These violations are ongoing.

81.    The defendants discriminated, and will continue to discriminate, against the plaintiff

and the New York State sub-class on the basis of disability and the plaintiff and the New York State

sub-class are being directly or indirectly refused, withheld from, or denied the accommodations,

advantages, facilities and privileges thereof in § 40, *et seq.*, and/or its implementing regulations.

82.    The plaintiff and the New York State sub-class are entitled to compensatory

damages of five hundred dollars per instance, as well as civil penalties and fines under N.Y. Civil

Rights Law § 40, *et seq.*, for each and every offense.

## FOURTH CAUSE OF ACTION:
## NYCHRL

83.    The plaintiff, on behalf of the plaintiff and the New York City sub-class, repeats and

realleges every allegation of the preceding paragraphs as if fully set forth herein.

84.    N.Y.C. Administrative Code § 8-107(4)(a) provides that,

It shall be an unlawful discriminatory practice for any person, being the owner,

lessee, proprietor, manager, superintendent, agent or employee of any place or

provider of public accommodation, because of … disability … directly or

20

indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof.

85.    The defendants' locations are sales establishments and public accommodations within the definition of N.Y.C. Administrative Code § 8-102(9), and the defendants' website is a service that is heavily integrated with its establishments and is a gateway thereto.

86.    The defendants are subject to NYCHRL because the defendants own and operate the defendants' physical location in the City of New York and the defendants' website, making the defendants persons within the meaning of N.Y.C. Administrative Code § 8-102(1).

87.    The defendants are violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the defendants' website, causing the defendants' website and the services integrated with the defendants' physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that the defendants make available to the non-disabled public.

88.    The defendants are required to

make reasonable accommodation to the needs of persons with disabilities ... any person prohibited by the provisions of [§ 8-107, *et seq.*,] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to ... enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity.

N.Y.C. Admin. Code § 8-107(15)(a).

89.    The defendants' actions constitute willful intentional discrimination against the New York sub-class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that the defendants have: constructed and maintained a website

that is inaccessible to blind class members with knowledge of the discrimination; constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

90.    The defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

91.    As such, the defendants discriminated, and will continue to discriminate, against the plaintiff and the New York City subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the defendants' website and establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins the defendants from continuing to engage in these unlawful practices, the plaintiff and the New York City subclass will continue to suffer irreparable harm.

92.    The defendants' actions were and are in violation of the NYCHRL and therefore the plaintiff and the New York City subclass invoke their right to injunctive relief to remedy the discrimination.

93.    The plaintiff and the New York City subclass are also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

94.    The plaintiff and the New York City subclass are also entitled to reasonable attorney's fees and costs.

95.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein the plaintiff and the New York City subclass pray for judgment as set forth below.

## FIFTH CAUSE OF ACTION:
## DECLARATORY RELIEF

96.    The plaintiff, on behalf of the plaintiff and the class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97.    An actual controversy has arisen and now exists between the parties in that the plaintiff contends, and is informed and believes that the defendants deny, that the defendants' website contains access barriers denying blind customers the full and equal access to the goods, services, and facilities of its website and by extension its physical locations, which the defendants own, operate, and control, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

98.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

99.    Wherefore, the plaintiff prays this Court grant as relief:

a.    A preliminary and permanent injunction to prohibit the defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

b.    A preliminary and permanent injunction requiring the defendants to take all the steps necessary to make its website into full compliance with the requirements set

forth in the ADA, and its implementing regulations, so that the website is readily accessible to and usable by blind individuals;

c.    A declaration that the defendants own, maintain, and/or operate the defendants' website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

d.    An order certifying the class and sub-classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing the plaintiff as class representative, and the plaintiff's attorneys as class counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to the plaintiff and the proposed subclasses for violations of their rights under the NYSHRL, NYSCRL, and NYCHRL;

f.    Pre- and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the plaintiff demands a trial by jury on all questions of fact raised by the complaint.

LAW OFFICE OF JUSTIN A. ZELLER, P.C.

By: _____
Brandon D. Sherr
bsherr@zellerlegal.com
Justin A. Zeller
jazeller@zellerlegal.com
277 Broadway, Suite 408
New York, N.Y. 10007-2036
Telephone: (212) 229-2249
Facsimile: (212) 229-2246

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb (JG7905)
nyjg@aol.com
Dana L. Gottlieb (DG6151)
danalgottlieb@aol.com
150 East 18th Street, Suite PHR
New York, N.Y. 10003-2461
Telephone: (212) 228-9795
Facsimile: (212) 982-6284

Dated: New York, New York
        November 9, 2017                    **ATTORNEYS FOR PLAINTIFF**